FANNIE K. HARRISON *v.* THE UNION AND NEW HAVEN TRUST COMPANY, EXECUTOR (ESTATE OF CHARLES W. HARRISON)

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

436

Argued May 5—decided June 14, 1960

*Ellsworth B. Foote* and *Richard C. Hannan,* for the appellant (plaintiff).

*John H. Weir,* with whom was *William M. Mack,* for the appellee (defendant).

KING, J. On December 8, 1916, the plaintiff was granted a divorce from her husband, the defendant's decedent.[1] In its decree, the court awarded custody of the minor child to the plaintiff, together with alimony and support in the amount of $6000 of which $2000 was to be paid March 1, 1917, and $1000 annually thereafter until the entire sum was paid. It was further provided that the decedent "pay to the plaintiff from his income the sum of $15 per week during her life, as alimony for the plaintiff and support for the child." The decree was modified in 1933 to reduce the weekly payment to $10. The dece-

---

[1] Questions growing out of this divorce action have been before this court twice previously. *Harrison* v. *Harrison,* 94 Conn. 280, 108 A. 800; *Harrison* v. *Harrison,* 96 Conn. 568, 114 A. 681.

dent during his lifetime fulfilled the terms of the decree except for two weekly instalments immediately prior to his death. These the defendant quite properly allowed to the plaintiff, as in effect a debt, under the rule of cases such as *German* v. *German,* 122 Conn. 155, 158, 188 A. 429. See *Smith* v. *Smith,* 1 Root 349.

The plaintiff, after the proper presentation of a claim and its disallowance, brought this action for damages or, in the alternative, an order directing the defendant to set up a fund sufficient to assure the continuance of the weekly payments during the plaintiff's life. In other words, the basic claim of the plaintiff is that the award of periodic alimony ran for her entire lifetime, continuing, after the decedent's death, as an obligation of his estate. In a counterclaim, the defendant asked for a decree invalidating and setting aside so much of the original decree, as modified in 1933, "as purports to obligate this defendant [executor] to pay periodic alimony to the plaintiff." The court rendered judgment for the defendant on the complaint and the counterclaim, and from that judgment the plaintiff has appealed.

Parenthetically, we point out that it is the better practice to provide a separate allowance for alimony from income, as authorized by § 46-21 of the General Statutes, and for support of each minor child, as authorized by § 46-26, rather than to combine them in a single allowance as was done here. See cases such as *Lilley* v. *Lilley,* 125 Conn. 339, 342, 5 A.2d 849. Neither party, however, makes any claim that the allowance, at least subsequent to the modification in 1933, purported to be, in whole or in part, for the support of the child, who necessarily has long since attained her majority. We treat the

present controversy, as did the parties, as one involving alimony, only, as distinguished from support of a child. Whether the distinction is important we have no present occasion to inquire. We merely point out that here no question is involved as to the survival, after the death of a father, of an order for periodic payments for the support of his child. See note, 18 A.L.R.2d 1126.

As specifically provided in § 46-21, which differs in no respect material to this case from chapter 190 of the Public Acts of 1911, which was in effect at the time of the rendition of the original decree, "[a]ny order for the payment of alimony from income may, at any time thereafter, be set aside or altered by [the superior] court." Necessarily, the power of modification given by this provision has been construed to be limited to situations where there is proof of a material change in circumstance subsequent to the date of rendition of the original decree. *Heard* v. *Heard,* 116 Conn. 632, 637, 166 A. 67; *Lilley* v. *Lilley,* supra, 341. For some reason not entirely clear, the defendant made no attempt to obtain relief under this provision, although it could hardly be claimed that the death of the decedent did not constitute a material change of circumstance, especially as to his income. See *Cary* v. *Cary,* 112 Conn. 256, 260, 152 A. 302.

Under the provisions of § 46-21, an award of alimony may take the form of (a) an assignment of a part of the husband's estate, now commonly accomplished by an award of a sum of money, or (b) an award of periodic payments from income, or (c) an award of both types of relief, as in effect was the case here. *German* v. *German,* 122 Conn. 155, 161, 188 A. 429. We are not concerned with the $6000 award, which was obviously not intended to be, nor

was it by its terms, an award from income. See note, 39 A.L.R.2d 1406, 1413. That portion of the decree was long ago satisfied. See *Cary* v. *Cary,* supra.

The decision of this appeal requires, first of all, a construction of the language of the decree itself, considered as a whole. See *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647, 153 A.2d 828. Only if the decree, properly construed, actually ordered payments of periodic alimony after the decedent's death, might we have to consider whether the court had the power to make such an order under § 46-21. Where, as here, an award of alimony is in the form of periodic payments "from . . . income," whether earned or unearned, the express terms of the award clearly manifest an intention that it should cease upon the death of the divorced husband, because that event would terminate the receipt of any income by him. See *Lilley* v. *Lilley,* supra, 343, where it was suggested, although not actually decided, that a provision in a decree for a specified monthly payment, after the death of the divorced husband, for the life of the divorced wife or until she remarried, was not a provision for alimony because it was not limited to the joint lives of the parties.

The provision in the instant decree that the periodic payments of alimony should be made during the plaintiff's life must, if possible, be construed in harmony with the language as to the making of such payments from income. If we give effect to both phrases, the intention expressed in the decree, construed as a whole, may reasonably be said to be that the decedent should make periodic alimony payments during so much of the plaintiff's lifetime as he himself lived and therefore had income, that is, during the joint lives of himself and the plaintiff. Note, 39 A.L.R.2d 1406, 1412.

While the authorities are not entirely harmonious, the result here is in general accord with that which, on one ground or another, has been reached in most jurisdictions, even though the controlling statutes differ. The cases are collected in notes in 18 A.L.R. 1040 and 39 A.L.R.2d 1406, and in A.L.R.2d Supplement Service, p. 2816 (1960). Our construction of the original decree makes it unnecessary to consider the other questions raised by the parties, including one as to the power of the court, under such a statute as ours (§ 46-21), to award alimony from "income" for a period extending beyond the husband's lifetime, that is, beyond the time when he could have any income, a power which is denied by what appears to be the weight of authority. See note, 39 A.L.R.2d 1408, § 3.

Technically, there is error in the judgment when it is ordered that so much of the original decree "as purports to obligate the defendant [executor] to pay periodic alimony to the plaintiff, be and the same hereby is declared invalid and is set aside," since, properly construed, there was no such portion of the decree. We do not deem it necessary, however, to remand the case for the correction of this very technical error, since the effect of the judgment was to absolve the defendant from liability for the payment of any alimony instalments accruing after the death of its decedent and that was the correct result under the express language of the decree.

There is no error.

In this opinion the other judges concurred.