ANTOINETTE G. VIGLIONE *v.* STEPHEN J. VIGLIONE

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued April 14—decision released June 15, 1976

*Charles G. Albom,* for the appellant (defendant).

*William M. Mack,* for the appellee (plaintiff).

BOGDANSKI, J. A judgment dated February 27, 1973, granted the plaintiff wife a divorce from the defendant husband, awarded her custody of their three minor children, and ordered the defendant to pay the plaintiff $5000 annually for three years plus $115 per week as alimony, and $35 per week for the support of each minor child. The decree also required the defendant to transfer his title to the family residence in Woodbridge to the plaintiff, to pay the mortgage installments and taxes on that residence, and to furnish the plaintiff with copies of his tax returns annually.

In March, 1975, the plaintiff remarried, and in April, 1975, the defendant moved that the decree of February 27, 1973, be modified in accordance with that change in circumstances. He sought termination of the obligations to pay periodic alimony and the mortgage and taxes on the Woodbridge residence. He also sought termination of the order to furnish the plaintiff with copies of his tax returns. The trial court concluded that the periodic alimony should terminate, that the order for the payment of the mortgage installments was not affected by the remarriage since it was in the nature of lump-sum alimony, and that the obligations to pay real estate taxes and to furnish tax returns should continue because they are related to the defendant's duty to support the children.

The defendant took the present appeal from the court's order, assigning error in the finding, in the overruling of his claims of law, and in the conclusions reached. Thereafter, upon motion, the plaintiff was granted an allowance of $1500 to defend this appeal, to which ruling the defendant duly assigned error.

We first consider the defendant's claim that the court erred in refusing to modify that part of the order requiring him to pay the mortgage installments on the Woodbridge residence. The defendant contends that that order was for periodic alimony and should have been terminated upon the plaintiff's remarriage.

Under the provisions of § 46-21 of the General Statutes (repealed, 1973 Public Acts, No. 73-373, § 43), in effect at the time of the original judgment, alimony could take the form of an assignment of a part of a husband's estate, an award of periodic payments from income, or both. See, e.g., *Harrison* v. *Union & New Haven Trust Co.*, 147 Conn. 435, 438, 162 A.2d 182. Periodic alimony may be modified by the court upon a showing of a substantial change in the circumstances of either party, and, except in the rarest of situations, the remarriage of a wife will furnish the basis for vacating such an award. General Statutes § 46-54; *Cary* v. *Cary*, 112 Conn. 256, 260–61, 152 A. 302. Alimony consisting of a specific portion of an estate or of a specific sum of money, however, is a final judgment which the court cannot modify even should there be a change of circumstances. *Harrison* v. *Union & New Haven Trust Co.*, supra; *Cary* v. *Cary*, supra, 259–60; see General Statutes § 46-54; see also General Statutes § 46-21 (repealed, 1973 Public Acts, No. 73-373, § 43).

In the present case, the obligation to pay the mortgage on the former family residence was not periodic alimony. When the 1973 decree was rendered, the state referee indicated that the mortgage obligation would survive the defendant's death. In ordering the mortgage payments, the court in

essence ordered the defendant to pay the plaintiff a specific sum of money from his estate, the amount of which could be accurately determined at the time of judgment. The fact that the defendant was permitted to pay the mortgage according to an existing amortization schedule rather than in a single payment does not have the effect of changing the obligation into periodic alimony. Since the mortgage award was for a specific sum of money, the court did not err in refusing to modify it.

The defendant next challenges the court's refusal to terminate the obligation to pay the real estate taxes on the Woodbridge residence. The court concluded that the defendant's duty to pay those taxes remained unaffected by the plaintiff's remarriage because the terms of the 1973 decree tied that duty to child support rather than to alimony. The defendant contends that the court misconstrued the 1973 decree.

The 1973 decree does not specifically state whether the duty to pay the taxes is related to alimony, child support, or both. An examination of the entire decree, however, compels the conclusion that the tax obligation is related to alimony and not to child support. Two provisions in the decree specifically concern child support: the defendant is required (1) to provide medical insurance for each minor child and (2) to pay the plaintiff $35 per week for the support of each minor child. The obligation to support each child automatically terminates when that child reaches the age of majority. The fact that the language of the decree does not suggest that the obligation to pay the taxes is dependent upon the minority status of any of the children, and the fact that it does so say with respect to the

medical insurance and weekly support payments, is strong evidence that the referee intended the payment of the taxes to be alimony.

Moreover, the provision of the decree requiring payment of taxes reads: "And the defendant is to pay mortgage and taxes on said residence." As already noted, and as the plaintiff concedes, the obligation to pay the mortgage was a form of alimony. If the state referee intended that the duty to pay taxes be treated as child support, it is most unlikely that he would have imposed that obligation by the use of the same clause which sets forth an obligation which is clearly alimony without specifically designating the tax payments as being for the support of the children. Furthermore, since the home itself came to the plaintiff by way of lump-sum alimony, it follows, in the absence of circumstances to the contrary, that the ancillary order for payment of taxes for the maintenance of that home was periodic alimony. We conclude, therefore, that the court should have terminated the defendant's duty to pay real estate taxes. See *Cary* v. *Cary,* supra.

The defendant next contends that the court erred in requiring him to continue to furnish copies of his tax returns to the plaintiff. Although the 1973 decree does not specifically relate that duty to either alimony or support, the court concluded that the duty was ancillary to child support and that it was therefore unaffected by the plaintiff's remarriage.

When construing a judgment, we may consider the circumstances surrounding its rendition. *Garguilo* v. *Moore,* 156 Conn. 359, 365, 242 A.2d 716; *Christiano* v. *Christiano,* 131 Conn. 589, 592, 41 A.2d 779. After the 1973 judgment was rendered, the referee who decided the case was called upon to inter-

pret the provisions of the decree relating to the tax returns. A transcript of the remarks made at that time has been incorporated in the finding. The referee stated: "[O]n this matter now in the nature of requiring the submission of tax returns—I have stated that so long as the order for *alimony* exists—that is, the payment of *alimony out of income*—the plaintiff is entitled to know what the financial situation of the defendant is from year to year." (Emphasis added.) There was some colloquy between the referee and counsel regarding financial disclosure in the event of a need for a modification of the support order. In essence, the state referee ruled that the tax returns were not to be turned over to the plaintiff if she lost her right to alimony, but that if modification of child support was sought, financial disclosure could be requested. Since the payment of alimony out of income was terminated as of the date of the plaintiff's remarriage, and since the plaintiff was not seeking a modification of the support order on the basis of a change in circumstances, the trial court erred in refusing to terminate the order to provide tax returns.

The defendant's final claim is that the court erred in making an allowance to the plaintiff to defend this appeal. It is within the discretion of the trial court to allow reasonable counsel fees in matters pertaining to divorce litigation. *Krasnow* v. *Krasnow,* 140 Conn. 254, 263, 99 A.2d 104; *Felton* v. *Felton,* 123 Conn. 564, 567, 196 A. 791. In 1973, the legislature enacted what is now General Statutes § 46-59 (1973 Public Acts, No. 73-373, § 27), which sets forth the relevant circumstances to be considered by the court in exercising that discretion. It provides in part: "In any proceeding seeking relief under the provisions of this chapter [c. 811,

Dissolution of marriage. Legal separation] . . . , the court may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46-52." General Statutes § 46-52 enumerates the following pertinent criteria to be considered: "the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award."

The defendant contends that § 46-59 is not applicable to this action because the original decree of divorce predated that statute's enactment. He argues that under the common law a wife is not ordinarily entitled to counsel fees if she has sufficient funds to pay the expenses of litigation; *Steinmann* v. *Steinmann*, 121 Conn. 498, 505, 186 A. 501; and if that standard were to be applied in the present case, the award of counsel fees to the plaintiff could not stand.

Section 46-59 is expressly applicable to any proceeding seeking relief under the provisions of chapter 811 of the General Statutes. The motion for modification was filed in April, 1975, long after the passage of § 46-59. That motion was a proceeding seeking relief under the provisions of chapter 811, to wit, under General Statutes § 46-54. Section 46-59 is therefore applicable to the present case. Unchallenged portions of the finding disclose that at the time of the allowance the defendant drew a weekly salary of $500 and had a net worth of approximately $123,000. The plaintiff's only source of income was $105 per week which she received

as support for her children. She had about $3000 in the bank, and she expected to receive $5000 as lump-sum alimony in February, 1976. The court concluded that $1500 should be allowed the plaintiff as reasonable counsel fees to defend the appeal. In view of the parties' respective financial situations, we cannot hold that the trial court abused the discretion vested in it by § 46-59 in allowing that amount to the plaintiff to defend.

There is error, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified to accord with this opinion.

In this opinion the other judges concurred.